IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**Jeremy Durst, Deanne Tanner, and**
**Michael Garcie**, individuals;

       Plaintiffs,

    v.

**Oregon Education Association**, a labor
organization; **Southern Oregon Bargaining**
**Council Eagle Point Education Certified and**
**Classified Employees**, a labor organization;
**Eagle Point School District 9**; **Portland**
**Association of Teachers**, a labor organization;
**Portland Public Schools/Multnomah County**
**School District Number 1**;

       Defendants.

_____

**Case No. 1:19-cv-00905-MC**

**OPINION AND ORDER**

**MCSHANE, District Judge:**

      Plaintiffs Jeremy Durst, Deanne Tanner, and Michael Garcie allege Defendants violated

their First Amendment rights by garnishing union dues from Plaintiff's paychecks. The parties

filed cross motions for summary judgment. Plaintiffs argue the deductions violated their First

Amendment right to be free from compelled speech. Defendants argue: (1) Plaintiffs' claims are

moot; and (2) Plaintiffs' claims fail on the merits as the voluntary garnishments do not violate

the First Amendment.[1] Because Plaintiffs' claims for injunctive relief and compensatory

---

[1] As Plaintiffs' claims clearly fail on the merits, the Court does not address Defendants' alternative
arguments that the garnishments were not state action required under 28 U.S.C. § 1983 and that, even assuming their
other arguments fail, Defendants are entitled to a "good faith" defense.

damages are moot, and their claim for nominal damages fails on the merits, Plaintiffs' motion for summary judgment is DENIED and Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

Plaintiffs are all teachers and former members of Defendant Oregon Education Association, a statewide labor organization, and its local affiliates. When Plaintiffs filed the complaint, they had each been members of their respective unions for several years. Plaintiffs joined their unions by initially signing membership and dues authorization agreements. Stipulated Facts for Cross-Motions for Summary Judgment ("Stipulated Facts"), Ex. 2, 9, 13, ECF No. 24. These agreements contained explicit cancellation provisions that required Plaintiffs to pay dues unless they revoked authorization for payroll deductions in September of that cancellation year. *Id.*

In early 2019, Plaintiffs requested that their payroll deductions cease immediately in light of the recent decision by the United States Supreme Court in *Janus v. AFSCME*, *Council 31*, 138 S.Ct. 2448 (2018). *Janus* held that the First Amendment prohibits unions from forcing compulsory payroll deductions—i.e., "fair share" fees—from workers who are not union members. *Janus*, 138 S.Ct. at 2486. Union representatives notified Plaintiffs that pursuant to their authorization agreements, their cancellation requests would not be effective until September 2019. Stipulated Facts ¶¶ 16, 21, 25.

Plaintiffs argue that they never waived their rights and therefore the continued deductions violated their First Amendment right to be free from compelled speech as laid out in *Janus*. Defendants contend that because Plaintiffs voluntarily entered into payroll deduction agreements as union members, the continued deductions did not violate Plaintiffs' First Amendment rights.

The Court concludes—as has every other court considering similar issues—that Plaintiffs' arguments are meritless.

## STANDARDS

A court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarima v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court will view the evidence in the light most favorable to the nonmoving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

As noted, the parties filed cross-motions for summary judgment. As discussed below, Plaintiffs' claims for injunctive and compensatory relief are moot. Plaintiffs' claim for nominal damages fails on the merits. The Court discusses each claim in turn.

### I. Mootness

#### A. Injunctive Relief

Plaintiffs seek to "Permanently enjoin Defendants . . . from deducting or collecting union dues from Plaintiffs and from maintaining and enforcing the revocation policy[.]" Compl. 10. As Plaintiffs are no longer union members and the union no longer takes deductions from paychecks of non-members, Plaintiffs' claim for injunctive relief is moot.

"Where the activities sought to be enjoined have already occurred, and the appellate courts cannot undo what has already been done, the action is moot." *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (quoting *Friends of the Earth, Inc. v. Bergland*, 576

F.2d 1377-79 (9th Cir. 1978)). One exception to the mootness doctrine is when the issue is "capable of repetition, yet evading review." *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (quoting *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997)). This exception to the mootness doctrine applies only in cases where "(1) 'the duration of the challenged action is too short to be fully litigated before it ceases,' *and* (2) 'there is a reasonable expectation that plaintiffs will be subjected to the same action again.'" *Id.* (emphasis added) (quoting *Am. Rivers*, 126 F.3d at 1123).

Plaintiffs argue the exception applies because "[t]he same deduction scheme which resulted in the violation of Employees' rights is still in effect today and Defendants have no intention to alter it. Moreover, Employees are still employed by School Districts . . . . They remain subject to dues deductions if their employers decide to begin them again." Pls.' Resp. 23, ECF No. 29. Plaintiffs' argument is unpersuasive. Plaintiffs are not subject to any "deduction scheme." Plaintiffs are no longer members of the unions. Stipulated Facts ¶ 27. Their employers no longer deduct fair share fees from non-union members. *Id.* ¶¶ 6, 28. In other words, there is no reasonable expectation that Plaintiffs will be subject to any involuntary deductions going forward. The capable of repetition yet evading review exception does not apply and Plaintiffs' claim for injunctive relief is moot.[2]

### B. Compensatory Damages

Plaintiffs' claim for compensatory damages is also moot as Defendants provided Plaintiffs with all of the compensatory damages sought in the form of checks sent to Plaintiffs' attorney. *See Id.* at ¶ 29 (after Plaintiffs filed this action, the union sent each Plaintiff a check for

---

[2] A one-time clerical error, where a school erroneously deducted $4.44 from Tanner's paycheck is just that; a clerical error. Stipulated Facts ¶ 28. That error, which was quickly identified and corrected, did not even result in the $4.44 being transferred to the union. This administrative error does not somehow mean Plaintiffs are subject to harm in the form of future fair share deductions.

all the deductions taken from Plaintiff's paychecks from the date the Plaintiffs requested

cancellation on). Plaintiffs' counsel immediately responded to Defendants' offer with the

following letter:

> I write on behalf of Mr. Durst, Ms. Tanner, and Mr. Garcie. Please find enclosed
> with this letter a return of the checks you sent dated October 3, 2019. After having
> considered your proffer, Mr. Dust, Ms. Tanner, and Mr. Garcie each respectfully
> refuse to accept this money and hearby return it.

Stipulated Facts Ex. 20.

The voluntary cessation doctrine is another exception to mootness. *Lohn*, 511 F.3d at

964. Generally, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of

power to hear and determine the case, *i.e.*, does not make the case moot." *Los Angeles Cty v.*

*Davis*, 440 U.S. 625, 631 (1975) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632

(1953)). However, where the Court determines that (1) the alleged violation will not recur and

(2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged

violation," the case will become moot. *Id.*

Here, it is clear the alleged violation will not recur for the reasons stated above.

Additionally, Defendants voluntarily refunded the full amount of dues garnished, plus interest,

for the months following Plaintiffs' requested cancellation. Stipulated Facts ¶ 29. In other words,

"interim relief" has completely "eradicated the effects" of Plaintiffs' claim for compensatory

damages. *Davis*, 440 U.S. at 631. The mere fact that Plaintiffs have refused to cash the refunds

does not turn an otherwise moot claim into a live case or controversy.

## II. First Amendment

### A. Nominal Damages

Plaintiffs' claim for nominal damages is not moot. "A live claim for nominal damages

will prevent dismissal for mootness." *Bernhardt v. City of Los Angeles*, 279 F.3d 862, 872 (9th

Cir. 2002). This is true even where related claims for injunctive relief and compensatory damages have been rendered moot. *Lokey v. Richardson*, 600 F.2d 1265, 1266 (9th Cir. 1979) (claim for nominal damages prevented dismissal even though claim for injunctive relief was moot); *Chew v. Gates*, 27 F.3d 1432, 1437 (9th Cir. 1994) (claim for nominal damages prevented dismissal even if claim for actual damages might be moot). This is because nominal damages, while symbolic in nature, serve the important purpose of vindicating an individual's rights even when no actual damages are available. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017).

## B. Compelled Speech Doctrine

Plaintiffs argue they never waived their First Amendment rights before Defendants deducted dues from their paychecks. Plaintiffs also argue that they became nonmember employees at the time they requested to leave their unions, and the continued deductions "eviscerate their First Amendment freedoms of speech and association." Pls.' Mot. SJ. 8. Plaintiffs rely heavily on *Janus* to argue that the deductions made here are "identical" to the deductions there. *Id.* Specifically, Plaintiffs contend that "in both instances, the employees challenging the coerced speech are public employees who are not union members," and the "arrangement violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." Pls.' Mot. SJ. 8–9. The Court disagrees.

The First Amendment to the United States Constitution not only protects an individual's right to speak freely but also the right not to speak at all. *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.* 487 U.S. 781, 796-97 (1988). The Supreme Court has invoked the compelled speech doctrine to strike down laws that compelled individuals to engage in expressive activities against their will; to hold events that contain messages with which they

disagree; and, as relevant here, to subsidize political messages they find personally objectionable. *See W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) (holding that public schools requiring children to salute the American flag violated the First Amendment); *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557 (1995) (holding that using anti-discrimination laws to require private parade organizers to include messages in their parade with which they disagreed violated the First Amendment); *Keller v. State Bar of California*, 496 U.S. 1 (1990) (holding that the use of compulsory bar dues to finance political activities violated the First Amendment). Each of these cases illustrate the principle that the government is barred from "[c]ompelling individuals to mouth support for views they find objectionable[.]" *Janus*, 138 S.Ct. at 2463.

In *Janus*, the Supreme Court held that the exaction of compulsory agency fees from nonmembers to support union activities violated this principle. *Id.* at 2464. The petitioner in *Janus* was employed by a state agency and represented by a union he wanted no affiliation with. *Id.* at 2461. The petitioner refused to join the union based on his belief that the union didn't represent his public policy positions. *Id.* Although Janus was not a member of the union, the collective bargaining agreement nevertheless required him to pay agency fees to the union. *Id.* In addition to costs for collective bargaining, the agency fees paid by nonmembers went towards costs for lobbying and advertising on behalf of the union. *Id.* Janus argued the agency fees violated the First Amendment by compelling him to subsidize speech with which he disagreed. *Id.* at 2462. The Supreme Court agreed, reasoning that public sector unions often advocate for controversial issues during collective bargaining. *Id.* at 2476. These issues relate to subjects such as climate change, religion, wages, and sexual orientation, all of which are matters of "substantial public concern." *Id.* at 2476-77. Compelling nonmembers to subsidize these views

ran afoul of the First Amendment. *Id.* at 2478. The Court concluded agency fees may be exacted from nonmembers only if such employees give affirmative consent and waive their First Amendment rights. *Id.* at 2486. Any waiver must be shown by "clear and compelling evidence." *Id.* (quoting *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 145 (1967) (plurality opinion).

*Janus* is not applicable to the facts at issue here. As a preliminary matter, the waiver standard set forth in *Janus* concerns only nonconsenting employees, *i.e.*, nonmembers. *Janus* only addressed workers who had agency fees extracted despite refusing to ever join their unions. *Janus* does not apply because this is not a situation where the government "compell[ed] individuals to mouth support for views they find objectionable[.]" *Id.* at 2463. Unlike the employee in *Janus* who never joined the union, Plaintiffs here voluntarily joined their unions when they signed the membership cards. Stipulated Facts ¶¶ 11, 18, 22. Unlike the nonmember in *Janus*, Plaintiffs here signed dues authorization agreements. *Id.* at ¶¶ 12, 19, 23. The authorization agreements explicitly confirmed that Plaintiffs would pay dues for the entire academic year (and could only opt out of paying future dues during a specified one-month time period).[3] *Id.* at Ex. 3; Ex. 10; Ex. 14. None of the Plaintiffs here were required to join the union as a condition of employment. *Id.* at ¶ 4. By joining the union, Plaintiffs received "membership rights and access to members-only benefits not available to non-members." *Id.* at 7.

This Court joins every other court to consider the issue in concluding that *Janus* is inapplicable to situations where an employee chooses to join a union, authorizes dues deductions over an entire academic year, receives union benefits not available to nonmembers, and then later

---

[3] Plaintiffs' claim that they didn't read the fine print in the agreement and did not know they had the right not to sign it is meritless. *Emp. Painters' Trust v. J&B Finishes*, 77 F.3d 1188, 1191 (9th Cir. 1996) ("A party who signs a written [labor] agreement is bound by its terms, even though the party neither reads the agreement nor considers the legal consequences of signing it."). That one chooses not to read an agreement does not mean one did not voluntarily enter the agreement.

attempts to cancel deductions outside of the opt-out period they earlier agreed to. *See Loescher v. Minnesota Teamsters Pub. & Law Enf't Emp.'s Union, Local No. 320*, No. 19-cv-1333 (WMW/BRT), 2020 WL 912785, at *7 (D. Minn. Feb. 26, 2020) (neither *Janus* nor state contract law allows plaintiff to voluntarily enter into a dues authorization agreement with her union and then cancel outside of the opt-out period); *Few v. United Teachers Los Angeles et al.*, No. 2:18-cv-09531-JLS-DFM, 2020 WL 633598, at *6 (C.D. Cal. Feb. 10, 2020) (holding that nothing in *Janus* makes plaintiff's decision to sign his union membership and dues authorization agreement involuntary).[4]

Requiring Plaintiffs to honor the earlier, voluntary opt-out agreement did not violate Plaintiffs' First Amendment rights merely because Plaintiffs later chose to revoke their memberships outside of the previously agreed upon opt-out period. *See N.L.R.B. v. U.S. Postal Serv.*, 827 F.2d 548, 554 (9th Cir. 1987) (upholding similar opt-out agreement after member revoked membership and noting "A party's duty to perform even a wholly executory contract is not excused merely because he decides that he no longer wants the consideration for which he has bargained."). Because Plaintiffs voluntarily agreed to the deductions, the deductions did not violate Plaintiffs' First Amendment rights. Plaintiffs' claim for nominal damages therefore fails on the merits.[5]

////

////

////

---

[4] In the interest of brevity, the Court only specifically cites to two of the tens of courts across the country to agree under facts analogous to those present here. *See* Defs.' Mot. 2-3 (collecting cases).

[5] To the extent Plaintiffs argue Defendants violated their rights by forcing Plaintiffs to remain union members against their will, this argument fails. Union members are not required to remain union members and "may resign from membership at any time." Stipulate Facts ¶ 4.

## **CONCLUSION**

Defendant's motion for summary judgment (ECF No. 26) is GRANTED.

IT IS SO ORDERED.

DATED this 31st day of March, 2020.


_____/s/ Michael McShane_____
Michael McShane
United States District Judge